Good morning, and may it please the court. I'll take my mask off. This case was heard originally by an administrative law judge whose appointment was illegally made according to the Supreme Court's decision, Lucia versus the SEC. That administrative law judge conducted the proceeding in 2016. In June of 2018, the objection to this appointment was made at the earliest time possible after Lucia was decided. It was made to the administrative law judge on remand as soon after remand was possible under the Department of Labor's rules and practices. The question presented here is whether under these circumstances of this case, which are not like many of the other cases, the objection to the constitutionality of the administrative law judge's appointment was sufficiently timely not to have been forfeited. First, let me say that this case is a little different. And I think one of the things that makes it different is that you look at the timeline of what happened in this case. But I think the question, Mr. Solomon, is why you didn't raise the objection before the remand? Before, meanwhile, the case was pending the board's rules to not allow... The question is why you didn't raise your objection to the ALJ before the remand? First of all, before the remand, there was no administrative law  judge who was appointed in accordance with requirements of the appointments clause. There wasn't anybody to go to. Now, when the case was pending before the board... When the case was pending before the board, Lucia was not the law. Lucia was not the law when the petition for review was filed with the board. And Lucia wasn't the law until the case was remanded by the... Actually, it wasn't even that. The case was remanded by the board. But these cases, these appointments clause cases were alive and kicking throughout the court system. Well, Your Honor, that's correct. But there was still no place to go with it. There was no administrative law judge who was appointed in accordance with the requirements of the appointments clause. And it would have been futile to have made that. Well, I guess that goes to the question of whether it would have been futile in front of the ALJ the first time, right? But then there's a separate question of would it have been futile to raise this in front of the board on your first appeal to the board in your opening brief? The board claims that it can hear constitutional questions and that it can resolve them. And it appears based on other cases, the board has decided that when the issue was raised in front of the board in an opening brief, it says, well, you failed to exhaust in front of the ALJ, but we think that's exceptional circumstance. Exception applies. And so we're going to consider it in front of us. So why didn't you raise it in your first appeal to the board? Well, in the first, the first appeal to the board was briefed in 2017. In November of 2017, we filed our brief before the board in 2017. LUCHEO was not the law. LUCHEO was decided in June of 2018. Right, but to Judge Wilkinson's point, people were arguing about this before LUCHEO was decided that unless the law prohibited you, unless there was already a case decided against you, right, so it would have been pointless to raise it, the burden is on you to raise the argument, even if the Supreme Court hasn't made it crystal clear that you're already entitled to relief. You're going to go to the board and ask them to make a constitutional ruling that, in fact, these folks are inappropriately appointed. I don't think the board has the authority to, would have been futile to raise it before the board. I'm not saying that we thought about it at that time. Well, Judge Rushing's point is right on because there have been many instances where people raise an argument, even though they don't think they're going to prevail on the argument, and they do, and they raise it in order to preserve it, and raising the argument before the board preserves it and avoids the kind of situation that you now find yourself in. I mean, there have been cases, I mean, there have been instances all along where people raise arguments protectively, or they raise arguments in order, you know, protectively in order to preserve the argument or, and sometimes a lot of landmark cases get up to the Supreme Court that way from somebody who says, I think I've got a good argument here and I may not prevail in this case before the board, but I'm going to preserve it. And in fact, there were a lot of people that did just that, and they had their cases remanded and with directions to appoint a validly appointed ALJ, but you did not do that. Well, I don't think anybody was raising it in 2017. I mean, issues before the board have to be raised in petition for review according to the board's rules. There was no issue there in 2017. I mean, the only case that was out there that suggested that the appointment of the Department of Labor's ALJs was unconstitutional was Bandemir. Now that was decided in December, 2016. And then I suppose it could have been raised at that time, but again, it would have been a waste of time. It was something... Well, but the problem is, Mr. Reimann, to raise the argument, it looks a little bit like sandbagging because you wait and you say, well, you know, I'll just see how we will take this case up to the Court of Appeals and we'll take it up and we'll see how it goes. And if we lose, we'll raise the argument and you get a second bite at the apple and you get the luxury of waiting to see whether you win or not. In this case, you didn't. So then you decide to... But the whole point is you need to raise it before you know what the outcome is going to be. Well, Your Honor, the question of the appointment of the Administrative Law Judge in 2017, when we had the opportunity to raise it before the board, had we done that, it was, again, it would have been futile to raise it before the board. They had no authority to decide it. And that is typically a defense forfeiture. Now, in your decision in First Citizens Bank Corporation versus Camp, which is the Fourth Circuit, 1969, the Fourth Circuit observed there can be no sandbagging where the challenged defects are not correctable at the administrative level. I guess your argument is presuming that we can judicially create a exception to a regulatory exhaustion requirement. Is that... Are you arguing that we can create an exception to this exhaustion requirement that is in the regulations? Your Honor, I don't think we violated an exhaustion requirement. First of all... You're arguing a language of... You're arguing an exception here, it sounds to me like you're saying that you didn't exhaust in the front of the board the first time, but it was excusable. There's an exception because the law was not clearly established in your favor. Right, that's your argument that you're making right now. Not exactly. First of all, because it's a constitutional issue involving questions for constitutional principles, I don't think that there is an exhaustion requirement in the regulations of the board or of the administrative law judges. Wait a minute. People forfeit constitutional issues all the time by not raising them. If you don't raise a Fourth Amendment argument or a Fifth Amendment argument or whatever, those are generally subject to forfeiture. But the fact of the constitutional nature of an argument, that by itself doesn't provide an exception to forfeiture rules. Well, I think it does provide an exception to forfeiture rules, but I don't think that we forfeited it. It wasn't really an active issue in terms of... All right, so let me ask you a slightly different question, right? So you're arguing, oh, the nature of the claim or what we knew, right? Let's pause it for a minute that those are off the table, that you lose on those. I really thought the argument you were going to make is different or that you were going to focus on is different. And I thought what you were going to say is, yeah, there's a board exhaustion requirement, right? So in order for the board to consider something under 802.301A, there has to be some exhaustion. But before the ALJ, the exhaustion looks different, right? And the ALJ has a limited exhaustion requirement, right? That says that you have to have a contested issue unresolved by the district director, right? And you hadn't raised the issue of the appointment before the district director. But of course, you wouldn't raise the question before the district director because it wasn't ripe yet. You hadn't been assigned an ALJ. And that's why there's an exception in those for issues that could not be addressed by the district director. And so in fact, it seems like to me what you really are trying to say is not that it's an exception. We don't care one iota what the issue was, whether it's constitutional or raised or not. When we went back to the ALJ, there was no exhaustion requirement that we have raised it before the district director. And we were starting afresh before the ALJ. That's what a remand does. That's my point. And I said that I didn't think we had forfeited under the rules because under the administrative law judge's rules, you can raise any argument for the first time before the administrative law judge. Right. And so if Bill would in writing, which we did immediately. And the real exception here is not being sought by you, but is instead being sought by your opponent who says, on remand, you ought to be limited to the issues that you previously raised. And that might be a very good rule. We might well like that. But we have to find it in the regulations. And it doesn't exist in the regulations. Like that rule, that on remand, you're limited to issues that were raised previously, might be a very sensible rule. In fact, the agency might well adopt such a rule. But there's not one now. And so we can't make it up. That's what your opponent is asking us to do, not the other way around. I understand you have this alternative argument about it's constitutional. And I really couldn't figure out what was going on. But those are secondary arguments that strikes me. The primary argument is the regulations don't require you to have raised it on the first go around once you're back at the ALJ. You get a chance on remand to raise whatever you like. In other words, the mandate rule doesn't limit you to arguments that were raised before once you're back on remand. I agree. That's our argument. You argued it in brief. I have to agree. But you were permitted to raise it. Whether you're required to raise it is one thing. You were certainly permitted to raise it. Well, we did raise it before the administrative law judge immediately upon remand. This is intervening authority. And the law of intervening authority in black lung cases, I think, was— Well, I think your position would probably open up a split with the other two major black lung circuits in the country, the third and the sixth. And it would have a little bit of an untoward effect here. This case, in the average black lung case, takes 22 months to resolve. Many of the recipients of these benefits are people of advanced age, and they are suffering from diseases involving inflexible lungs and a shortness of breath. And having a shortness of breath is perfectly miserable. And you want a rule, you want us to create a rule that allows you to bypass the remedies before or the chances that you had before the ALJ and the BRB and take this person and go all the way back to ground zero and say the last two years amounted to nothing. You don't get your benefits after all. At this point, allowing this sort of untimely proper of objections seems to me a way to gum up the system and induce delay in a system that, by its very nature, has layer after layer after layer of proceedings. And we would, I think, be doing that against the director's view and against the third and sixth circuit's view. And I just wonder what we do to the whole system when you say, oh, people can sit on their rights until they learn they have an adverse decision. And if we create a rule that says you rate it in order to preserve a rule for the next level up, you've got to raise it earlier, that raising something earlier preserves it later. And if we say that that is a rule that is perhaps one of the most common rules in any kind of procedural system, that in order to preserve an argument for the next step up, you have to raise it below. Well, your honor, I disagree that that's the law. I don't think that the law excuses violation of constitutional rights based upon these prudential concerns. And even the sixth circuit wouldn't go there. And the basis for it, which is the L.A. Tucker truck lines case, never really had any foundation. It hasn't been applied in a majority opinion by the Supreme Court. So I thought what you were going to say was slightly different, which is the third and the sixth circuit, we actually might well agree with them, but our case is different because of the remand. Both the third circuit case and the sixth circuit cases were instances where the issue was not raised before the board and then came directly to the court of appeals. And we said the board has an exhaustion requirement. We agree with that. But neither of those cases involved this remand. So you might well make the argument the third circuit and the sixth circuit are exactly right. But that doesn't control this result. It's not a split at all, is it? Well, no, I don't think it's a split. And I don't think our case is like the third or the sixth circuit case. And I don't think these issues were raised in the third circuit. It wasn't that it wasn't raised. The facts didn't exist there. There was no remand. And so you weren't back before the ALJ. And so it could not have possibly been raised given that it hadn't happened. That's correct. And I agree. Thank you, Mr. Solomon. We'll hear from Mr. Goldberg. Hello. Thanks for having me. May it please the court. My name is Jeff Goldberg, representing the Director, Office of Workers' Compensation Programs. And this is really a fairly straightforward case. The facts are that the appointment clause has been around since June 21, 1788. Ed Potter did not challenge, raise an appointment clause challenge to the ALJ, did not raise an appointment clause challenge to the Board, even though Lucy had been decided five months before the Board's decision, even though all of the Department of Labor had ratified all of the ALJ's appointment 11 months before the Board's decision. And the law is pretty clear, too. Appointments clause challenges, where they are as here as applied, are non-jurisdictional and subject to forfeiture. Lucy and Ryder both say that appointments clause challenges must be timely raised. So what is timely under the black line? So I want to give you a chance to give an overview, but I want to get to this point and try to understand. Point me in the regulations where the regulations require that issues raised on remand must have been raised before the remand, either to the ALJ or the Board. That's not a regulation, Your Honor. I just want to make clear, there is no regulation that requires that. No, but in the Board's remand decision, they order the ALJ to reconsider these and only these issues. In this case, it was the minors entitled to benefits, because they had already affirmed Ed Potter's status as the responsible operator. And so your point is that your argument is that at J93, where they issue the remand, that that created some sort of a forfeiture, right? The scope of the remand created a forfeiture that's not in the regulations? No, the forfeiture was created when Ed Potter failed to properly raise it. They are required to identify issues to the district director. The ALJ can only consider those issues, and he didn't raise it before the ALJ, and he didn't raise it before the Board. I understand, but why on remand? What I'm getting back at, and then I'll let you go ahead and talk about whatever else you want to, to the extent that you're more interested in those things. But what I don't understand is why on remand? And I understand your argument about J93. You can hypothetically assume that I don't buy it, but maybe others will, right? That that created a forfeiture. But if there's no regulation that limits the issues to be raised on remand to those that have been previously raised, if there's no regulation, it might be a good idea. It might serve great policy goals. But my job is to, like, determine what the Board's actual forfeiture rules require, what the actual regulations require. And you agree that there's no such regulation. Not specifically directed to remand, but the regulation— That's the case we've got, right, is on remand. Yes, but once you fail to raise an issue before the Board, it's forfeited. And why? Tell me why that is, because the Board's forfeiture says we won't consider it. That is, the Board won't consider it. It doesn't say, nor shall it be considered by the ALJ on remand. That's not what the regulations say. No, it doesn't. But the ALJ, in this case, was ordered by the Board, a superior authority, to consider only the specific issues that the Board directed the ALJ to consider. Okay, but neither the ALJ nor the Board made that argument, right? Like, the ALJ said what you agree there's no regulation on, which is you didn't raise this the first go-around, and you can't raise it now. And that's what the Board agreed with. You're now saying the scope of the remand requires forfeiture. I understand that argument, but that's not the argument that was accepted below. That's not what I'm saying. I am saying that Ed Potter's failure to raise the issue to the Board created forfeiture. And can you explain to me, under 802.301A, why that is? Like, pointing to the regulation. Why, under the text of the regulation, that forfeited issues on remand? Well, first, under 802.211 and 802.301, the petitioner is required to present its arguments. The arguments have to arise from the ALJ's decision, and they have to be supported by argument and fact. There was no argument regarding the employment clause. And just like in the Third Circuit, or the Sixth Circuit, if that had been the argument that had been raised, right, and the Board had said you didn't raise this before us, that's fine. But here it went back down, right? It didn't stay there. So the Board could have made that argument, but it didn't. It's remanded on other issues. And then the ALJ has a fresh crack at it. If you were to remand, say, a hypothetical case, or this court were to remand a case, and you said we affirm findings A and B, but we didn't want further consideration of C and D, the judge below would not be free to do A through B and maybe F and G as well. The petitioner's argument, Mr. Solomon's argument here, does it deny altogether the ability of a procedural system to fashion procedures that it's necessary to raise something at a lower level in order to preserve it for a higher level? Is it Mr. Solomon's view that, in your judgment, that he is denying the ability of the Black Lung System to engage in these sorts of procedural steps that in order to preserve an issue for a higher level, you have to raise it first at a lower level? That would seem to me to be sort of meat and potatoes procedure. Right, exactly. This is a constitutional issue, but constitutional issues, as you pointed out earlier, can be and often are forfeited. But I mean, the question is whether the system itself, the administrative system, and the director have the ability to fashion procedural steps, which are among the most common in every procedural system, that you have to raise an issue earlier in order to preserve it later. And that's just a bedrock of procedural efficiency. And I'm concerned that Mr. Solomon's position comes close to denying the ability of the system to take that step. Do you understand what I'm saying? And I agree. Your Honor, 30 U.S.C. 932 gives the Secretary of Labor the power to promulgate regulations. And these regulations, in terms of issue exhaustion, are the type that every first-year law student learns. You raise an issue below. If you lose, you preserve the issue. Then you argue it before the appellate court. Yeah, but what I'm saying is true. I mean, I hear exactly where you're coming from. Normally, procedural regulations are statutory or regulatory, but not invariably. For example, we have local rules and all the rest. But the question is, even if the statutes and the reg are sound, it is okay to impose or to have a procedure that serves the interest of the system in advancing administrative efficiency. That is at the heart of what we do. And just to say that the administrative system here works some sort of injustice on the appellant, it just doesn't seem to me that even where there is no statute or no regulation, it is not out of bounds to have a view of preservation of an issue, that you do it sooner rather than later, because sooner rather than later is essential to allowing every ALJ, every district court, every board of benefits review the chance to take a look at this in a timely fashion and not to have to let litigation dribble on and on by people who don't raise something in a timely fashion and raise it only after a remand when they don't like the result. And in particular, in this system, to adopt that kind of view is simply going to add to the extraordinary delay that already attends these proceedings. As you point out in your brief, it takes 22 months to get one of these things resolved. These are elderly people and they have worked in the mines and their lungs are shot. They're inflexible and many of them are frankly struggling for breath. And we are going to deny the system the most minimal ability to expedite the consideration of their claims. You see my concern? Yes, we do. And we absolutely agree with you. The regulations require issue exhaustion, just like most systems do. This isn't a case where, say with Social Security, which doesn't contain an issue exhaustion scheme. The regulations here require it. Okay, now tell me what regulations require it. Just cite to the regulations that require issue exhaustion, okay? Yeah, 802.211. 20 CFR 802.211. Do you agree? Do you agree? So I very much accept Judge Wilkinson's good point that if the regulations or statutes don't include it, we can, under McCarthy v. Madigan, imply issue exhaustion under certain circumstances. But my question is, do you agree that where the regulations include some issue exhaustion, that McCarthy v. Madigan does not permit us to supplement those? In other words, we have to, whatever they are, you may be right, I may be right, I don't know, but once we decide what those regulations are, McCarthy v. Madigan doesn't allow us to supplement whatever the regulations are, given that you have regulations in place. Well, you know, if you were to describe that, I think prudential issue exhaustion would be appropriate. But that's what I want to get at, is McCarthy v. Madigan is for the context in which there is no statutory or regulatory issue exhaustion. Where the director here has chosen certain issue exhaustion requirements in the regulations, and we can debate what those are, but we know what they are, right, the provisions are here. Then McCarthy v. Madigan doesn't let us supplement those, right, because your agency has made choices about what regulations and issue exhaustion to enact. And they have enacted some, and it would be a gross use of our power to go in and be like, yeah, but we really need to add these couple, right? Right, but our issue exhaustion requirements are at every level, from the district director to the director. Well, I understand, but I just want to make clear, your argument is we get them from the regulations, not this sort of McCarthy v. Madigan, make it up as we go approach. Right, although, again, prudential issue exhaustion would be appropriate here, just because unlike, for example, Social Security, ours is an adversarial scheme, and parties are expected to develop their issues, which is not the case with another. But the point is, you're saying here, and I want to make this clear, you're saying here that you have required issue exhaustion by virtue of the regulations. Yes. And that even if you hadn't done it for this specific thing, that in the interest of procedural efficiency, you have some prudential latitude. Now, you don't have complete prudential latitude because, but what you're, the latitude you're asking here is that you raise an issue first to preserve it later. There isn't any more basic proposition for procedure than that. But you're pointing out, we don't even have to go that far. We don't even have to skate on that ice. We can simply say there was an exhaustion requirement, which was set forth by the director. Exactly, and it would not have been futile because, as I said, by the time the board issued its first decision, the Department of Labor had, or the Secretary of Labor had ratified all the ALJs, and Lucia was almost half a year old. It did seem to me that the DOL had issued these regs, and that the district director had issued regs to the ALJ and the BRB, extensive regulations that said you have to raise and frame issues at one level to have it considered at the next. And that's what I thought was the gravamen of the director's instructions and directions to the ALJ and the BRB. Is that correct? Yes, Your Honor. Your Honor, the issues ideally narrow as the case moves up the appellate chain, up the litigation. Because it's, like, not actually in the rules, right? No, because sometimes issues are not resolved, and the same ones that were there at the start are still there at the end. Thank you. Judge Richardson, do you have any further questions? No, no further questions. Judge Rushing, do you have any questions? No, thank you, Judge. All right, Mr. Austin. Good morning, Your Honors. May it please the Court, I'm Brad Austin. I represent Austin Sammons in this case, the coal miner. I'm coming at this case, I guess, from a bit of a different point of view. I'm one of the attorneys who represent, you know, a volume of coal miners who have been impacted by cases like this following the Lucia decision. Judge, I think to your point, it was 3,915 days ago that Mr. Sammons filed his federal black loan claim, 3,915 days. Of course, this court knows the procedural history. It's very complicated from the district director to the ALJ, to the BRB, back to the ALJ, back to the BRB, and then to this court. But the issue is this appointments clause challenge did not occur until after the remake. And so, of course, I think this court has a grasp on why that's a potential problem. I believe the court has a very good understanding of that. Well, I think your comments are well taken because they help to remind us that there is a human being at the end of this line. And this man has gone through layer after layer after layer to try to get those benefits. And the news comes to him and his family, yes, you have those benefits. And then we yank it away from him and say, no, you've got to start it all over again. And there's a human being involved here. And I just have a problem with where this is all going in terms of adjudicating cases where people have got their, people's lungs are no longer pink. They have lost their elasticity. Many of them are choking. It is a miserable thing not to be able to draw a deep breath. And then we're going to introduce further inefficiency and delay into a system which already suffers too much. Do you understand what I'm saying? Correct, Your Honor, absolutely. And unfortunately, that is something we see every day. And in this case, there's really evidence of that. Like you said, I mean, 3,915 days have passed. In this case, for this particular poll on it. And Judge, the Glidden v. Zandok Supreme Court case said that these challenges to judges' authority really need to be raised at the earliest possible time. And I do think the time frame is important in this case. You know, Lucia was being decided while this case was at the Benefits Review Court. But seven months later, the issue was raised for the first time following the remand, which did occur on separate issues from Lucia. It had nothing to do with Lucia. The Administrative Law Judge required, as the regulations require, a pre-hearing statement to address all of those issues. At the formal hearing in this case, the Administrative Law Judge specifically asked the parties, are there any additional new issues that you'd like to raise? Of course, none of that occurred in this case. The employer attempts to argue that this Lucia decision was not in existence. But, you know, Lucia cites the Freytag case from 1991, and that was a special trial judge's inferior officer's case. And the Lucia case specifically said that all of the law in existence was already there to reach the decision in Lucia. So these ALJs are in a much different position than then. So this has been percolating for years. And in the immediate aftermath of Lucia, the Sixth Circuit said in the Joseph Forrester trucking case that there were legions of BLBA cases that were being granted Lucia-related relief. I was part of dozens and dozens of them. This Appointments Clause stuff was a hot issue. Your Honor. For years in this system. There's no reason they couldn't have raised it. It was percolating for years, Your Honor. And I do see that my time is almost up. But I completely agree. I think the deadlines or the timeframe here, Lucia was decided in June of 2018. The Benefits Review Board's decision came in November of 2018. And then it wasn't until seven months after that that this was raised. So, Your Honor, I see that I'm out of time. But if the Court has any additional questions, I'm happy to take those. Any questions? All right, Mr. Austin. Thank you very much. Mr. Solomon, you have some rebuttal time, sir. We're missing two aspects of this case. First of all, the fascination aspect. I fully understand. I've seen more of these cases, as many of these cases as anybody. And they are sad cases. But that doesn't mean that the problems with these cases is a good reason to deprive employers of the constitutional rights that are preserved to them. I think that the fact that this is the kind of issue that it is, a poor constitutional issue. First of all, there's no duty on the part of anybody to go through the Supreme Court decisions of the past 30 years and see what might apply to us. I don't think there's any duty. No, that's not. You wouldn't have had to go through Supreme Court decisions for 30 years. This was not only a percolating issue within the black lung community. It was a hot issue. And you were on notice that this was an issue. And as a protective matter, any person would have raised that issue in order to preserve it for the next level up. And it didn't require any search of a haystack for a needle to understand that this issue was front and center within the pneumoconiosis community. Your Honor, we don't have an obligation under the law, under FRITAG, under the Social Security decision in Carr v. Saab, to raise an issue before an administrative agency, an executive branch agency that they can't solve. I don't think that we have an obligation to do it. I want to ask you about that because I read the board's order to rely on two separate waivers, two separate forfeitures. The board says this issue is forfeited because, number one, you didn't raise it in front of the ALJ the first time. And number two, you didn't raise it in front of the board on your first appeal. And those seem to me to be two separate bases for finding a forfeiture. So even if we accepted that maybe in front of the ALJ the first time they couldn't have given you any relief, maybe you could be excused for that if you had raised it to the board on your first appeal because there's clearly an exhaustion requirement in front of the board, but you didn't. And I didn't see in your brief this argument that I'm hearing today about, well, even if there's an exhaustion requirement to raise it the first time, you can forgive it because we raised it the second time. I didn't see you arguing that there should be a specific remand regulation, but you can point me in your brief to where that is if you want. Well, I think in the brief what we argue is that we didn't forfeit at any time. And when it came back before the Administrative and Law Judges, there wasn't any requirement that these issues have been raised somewhere before it got back to the Administrative and Law Judges. We raised it within the context of the rule that applied to us in that particular situation, which is to say that we raised it as a new issue in writing before the Administrative and Law Judge. There's no rule that says you had to have raised it the first time. And really having raised it the first time with the Department of Labor saying you had to raise it before the agency, which is completely irrelevant because the agency doesn't even know what it is. And they fill out these forms and send them up to the ALJ. I think that another point I'd like to make, if I may, is that there's a statutory element to this, too. And I think the statute controls over the regulations and the Constitution controls over the statute. But the statute does not contain an exhaustion requirement or a forfeiture requirement. But that's the case, Mr. Solomon. That's the case in a lot of situations where statutes don't cover everything that can be done under a reg. And the question is whether the reg is consistent with the statute. And it is. Because the statute wanted the black lung process to move efficiently. And you can't expect every little that has no Congress that I know that would have legislated in the kind of detail that you've just set forth. Your Honor, let me correct you on that. You're wrong here. The Black Lung Act is part of the Mine Safety and Health Act. The Mine Safety and Health Act was written in an act at the same time. And in the Mine Safety and Health Act, there is a forfeiture requirement written by the same Congress, the same committees, an express forfeiture requirement, and it is not carried over into the black lung site. Also, Congress, during that same period of time, wrote many statutes which express forfeiture requirements. Yes, and there are many others that don't. There are many others that don't. It is not a sine qua non for that statute to set forth. Do you have some quick, Mr. Solomon, do you have some quick conclusion you wish to come to? Yeah, and what I'm saying is that Congress did not intend, based upon ordinary principles of construction, to have a forfeiture requirement in that statute because in the same statute, with respect to another part of it, they did have an express forfeiture requirement. Same writers, same committees, same time that it was in. All right, thank you, sir. All right, we will appreciate your arguments very much, and we will adjourn court.
judges: J. Harvie Wilkinson III, Julius N. Richardson, Allison J. Rushing